montgomery v. state

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS.  2-03-425-CR

         2-03-426-CR

ANTHONY MAURICE MONTGOMERY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

INTRODUCTION

Appellant was charged in two indictments of two separate offenses of aggravated robbery with a deadly weapon and pleaded guilty to both offenses.  After finding Appellant guilty as charged in both cases, the trial court sentenced Appellant to seventeen years’ confinement on each charge, with the sentences to be served concurrently.  In his sole point on appeal, Appellant argues that the trial court erred in overruling his motion to suppress his confession because it was given after he was arrested pursuant to an arrest warrant that was not supported by an affidavit showing probable cause.
(footnote: 2)  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 2001, while under arrest, Appellant gave a written statement to Detective Jim Ford of the Arlington Police Department implicating himself in two separate robberies that occurred in Arlington on January 18 and 19, 2000.  Appellant was arrested pursuant to a warrant based on an affidavit of Detective Ford.  The affidavit alleged that Appellant was involved in an aggravated robbery at the G Willickers Pub in Arlington on January 19, 2000. 

Detective Ford had been investigating a string of aggravated robberies that had occurred in Arlington, and several individuals had been arrested in connection with this investigation.  Two individuals had previously provided statements identifying Appellant as an accomplice in some of these robberies.  Based on the information gathered, Detective Ford had executed the affidavit requesting an arrest warrant be issued for Appellant as a participant in the aggravated robbery at the G Willickers Pub.  After his arrest pursuant to this warrant, Appellant confessed to being involved in this offense as well as in an aggravated robbery that had occurred on January 18, 2000.

Appellant filed a motion to suppress his confession, contending that his arrest was illegal because it was based on an affidavit that did not contain sufficient facts to establish probable cause.  After hearing arguments, the trial court denied the motion, and Appellant subsequently pleaded guilty to both indictments. 

Appellant’s sole complaint on appeal is that the trial court erred in overruling his motion to suppress under the United States and Texas Constitutions.  However, Appellant fails to distinguish his rights under the Texas Constitution from those under the United States Constitution.  Therefore, we will address only whether the trial court's denial of his motion to suppress violated his rights under the United States Constitution.  
See Dewberry v. State
, 4 S.W.3d 735, 743-44 (Tex. Crim. App. 1999) (stating that because defendant failed to distinguish his rights under the Texas Constitution from those under the federal constitution and combined all four points into one argument, court would address only whether defendant's rights under the United States Constitution were violated), 
cert. denied
, 529 U.S. 1131 (2000).

Appellant specifically argues that the affidavit fails to show that the complainants of the robbery identified Appellant, beyond merely giving a general description of the suspects; he also argues that statements of two participants in the series of robberies are vague and confusing because they cannot identify a specific location or date that these robberies occurred.  Appellant argues that, consequently, the affidavit does not contain sufficient probable cause absent “reliance on the unjustified conclusions of the affiant.” 

STANDARD OF REVIEW

A magistrate’s determination to issue a warrant is subject to a deferential standard of review.  
See Swearingen v. State
, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004) (citing 
Illinois v. Gates
, 462 U.S. 213, 236-37, 103 S. Ct. 2317, 2331 (1983) and 
Johnson v. State
, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990), 
cert. denied
, 501 U.S. 1259 (1991), 
overruled on other grounds by
 
Heitman v. State
, 815 S.W.2d 681 (Tex. Crim. App. 1991)); 
Davis v. State
, 144 S.W.3d 192, 196 (Tex. App.—Fort Worth 2004, pet. ref’d) (op. on reh’g). 

We give great deference to the magistrate’s determination of whether the affidavit reflects a “substantial basis” for concluding that probable cause exists.  
Gates
, 462 U.S. at 236-37, 103 S. Ct. at 2331.  Under this standard, we look to the totality of the circumstances regarding the information contained in the affidavit.  
Johnson
, 803 S.W.2d at 289; 
Davis
, 144 S.W.3d at 196-97.  An affidavit must provide the magistrate with sufficient factual information to support an independent judgment that probable cause exists to believe that the accused has committed an offense.  
See McFarland v. State
, 928 S.W.2d 482, 509 (Tex. Crim. App. 1996), 
cert. denied
, 519 U.S. 1119 (1997); 
Brooks v. State
, 76 S.W.3d 426, 431 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  The affidavit does not need to contain sufficient evidence that would convince a jury of the defendant’s guilt beyond a reasonable doubt.  
McFarland
, 928 S.W.2d at 509-10.  In assessing the sufficiency of an affidavit for an arrest or a search warrant, the reviewing court is limited to the four corners of the affidavit.  
Hankins v. State
, 132 S.W.3d 380, 388 (Tex. Crim. App.), 
cert. denied
, 125 S. Ct. 358 (2004); 
Jones v. State
, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 921 (1993).  The reviewing court should interpret the affidavit in a common sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences from the facts contained in the affidavit.  
Hankins
, 132 S.W.3d at 388; 
Jones
, 833 S.W.2d at 124.

ANALYSIS

The affidavit in the present case states, 

Between January and May of 2000 there were nine aggravated robberies at restaurants and bars in Arlington, one aggravated robbery at a restaurant in Dalworthington Gardens, and one aggravated robbery at a restaurant in Grand Prairie committed by multiple black males wearing ski masks or bandannas on their faces and armed with handguns.  Most of these offenses took place at approximately closing time or after closing time. . . . Detective Ford obtained copies of all of these offenses and became familiar with these offenses. 

The affidavit shows that one of these aggravated robberies occurred at G Willickers Pub and that during his investigation, Detective Ford “personally interviewed the victims of this offense, Charles and Beadie Yendt.”  The affidavit states,

Charles Yendt described suspect number one as a tall and thin black male approximately 6'0", 150 pounds, approximately 23 years old, armed with a medium size dark colored semiautomatic pistol.  Charles said that suspect number one was wearing a dark heavy coat and dark colored stocking cap.  Suspect number one matches the general description of [Appellant] a black male born on 6-23-76.

Detective Ford’s affidavit is also based, in part, on the written statements of two individuals who were personally interviewed by Detective Ford and who had confessed to being participants in several of the Arlington robberies.  The affidavit shows that Rodney Rodriquez Singleton provided a statement to Detective Ford on June 23, 2000 wherein he admitted to participating in several robberies between January and May of 2000 and stated that he committed these robberies with, among others, Appellant.  The affidavit further recites, 

During this interview Singleton voluntarily confessed to being the driver during several of these restaurant robberies described which took place in the Arlington area between January and May of 2000.  Singleton advised that he committed these aggravated robberies with Marco Jones, Tony Mitchell, and [Appellant].  Singleton said that one of the handguns used in these robberies belonged to Singleton’s brother Charles.  Singleton described this gun as a black 9mm semiautomatic pistol.  Singleton stated that he could not remember the specific locations where he committed aggravated robberies with [Appellant].  Singleton stated that he committed these aggravated robberies in the Arlington area with [Appellant] in early 2000.  Singleton stated that [Appellant] is Singleton’s wife’s cousin.  Singleton provided sufficient information to enable Detective Ford to obtain a color photograph of [Appellant,] a black male born on 6-23-76, from the Gregg County Sheriff’s Office.  Singleton voluntarily provided Detective Ford and Detective Nutt with a written confession statement. 

Detective Ford constructed a six position color photo line up using this photograph of [Appellant] and five other different photographs of different black males with similar appearance.  

On 6-27-00 Detective Ford and Detective Nutt showed this photo line up to Singleton.  Singleton pointed out the photograph of [Appellant] and stated that this is a photograph of the same [person] who committed several restaurant robberies with Singleton in the Arlington area in early 2000.  

The affidavit further shows that Tony Wayne Mitchell provided a statement to Detective Ford on November 22, 2000 and also admitted to participating with Appellant in several robberies in Arlington between January and March 2000.  The affidavit states,

Detective Ford showed Mitchell the six position color photo line containing a color photograph of [Appellant] and five other different black males with similar appearance.  Mitchell pointed out the photograph of [Appellant] and positively identified this photograph as being a photograph of the same [person] who committed an aggravated robbery with Rodney Singleton at a bar in the [sic] Arlington on a cold night in the year 2000.

. . . .

Mitchell stated that one cold night in the year 2000, he and Rodney Singleton and [Appellant] drove to a bar located in the Arlington area.  Mitchell was not familiar with Arlington and could not describe the location or provide the name of the bar.  Mitchell said that he remained outside in the car.  Mitchell stated that Singleton was the driver and they used Singleton’s car, which was a white Pontiac GrandAm at that time.  Mitchell said that Singleton and [Appellant] went inside the bar armed with only one handgun to the best of Mitchell’s knowledge and memory.  Mitchell said that he thought that Singleton and [Appellant] used a black 9mm pistol, which belonged to Singleton’s brother Charles.  Mitchell said that Singleton and [Appellant] returned to the car later with some bottles of liquor.  Mitchell said that Singleton and [Appellant] claimed that they did not get any money during this robbery.

The affidavit then sets forth in detail Detective Ford’s reasons for believing that the information obtained from Mitchell was sufficiently corroborated by other information independently obtained during his investigation:

Tony Mitchell’s account of the robbery matches the description of the aggravated robbery which took place at G Willickers Pub on 1-19-00 . . . for the following reasons:  The offense took place in a bar on a cold night in the year 2000.  Local weather records reflect that the temperature range was from 41 degrees to 76 degrees on 1-19-00.  The offense was committed by a tall thin black male and a short heavy set black male, which matches the description of [Appellant] and Rodney Singleton.  Singleton is approximately 5'10" and 300 pounds.  Arrest records reflect that [Appellant] is described as 6'2" and 165 pounds. Charles Yendt stated that a medium sized dark colored semiautomatic pistol was used by the suspects and only one gun was seen by Charles and Beadie Yendt which is consistent with Mitchell’s statement.  Singleton had previously stated that a black 9mm semiautomatic pistol was used during several of these robberies.  Singleton stated that this pistol belonged to Singleton’s brother Charles.  Mr. Yendt stated that no money was taken during this robbery which is also consistent with Mitchell’s statement. 

An affidavit based on hearsay information may be sufficient if the person supplying the information is reliable.  
Owens v. State
, 875 S.W.2d 447, 450 (Tex. App.—Corpus Christi 1994, no pet.) (citing 
Janecka v. State
, 739 S.W.2d 813, 824 (Tex. Crim. App. 1987)).  A statement against penal interest is inherently credible and may be sufficient, in and of itself, to establish probable cause.  
Cornealius v. State
, 870 S.W.2d 169, 172 (Tex. App.—Houston [14th Dist.] 1994), 
aff’d
, 900 S.W.2d 731 (Tex. Crim. App. 1995).  Furthermore, we do not agree with Appellant’s assertion that the statements by Singleton and Mitchell are vague and confusing or that Appellant is not sufficiently identified.  The affidavit shows that Mitchell’s description of this one particular aggravated robbery was sufficiently corroborated with other independent information gathered by Detective Ford.  Additionally, Detective Ford establishes in the affidavit that the descriptions of the suspects provided by the complainants at the G Willickers Pub matched the descriptions of Singleton and Appellant.  

Therefore, we hold that, based on the totality of the circumstances, the affidavit in the present case did provide the magistrate with sufficient factual information to support an independent judgment that probable cause existed for the issuance of the arrest warrant.

We also find the cases relied upon by Appellant distinguishable.  Appellant relies on 
Jones v. State
 and 
Gordon v. State
, cases in which the court of criminal appeals reviewed affidavits that were wholly conclusory and omitted the underlying facts justifying the conclusions by the officers involved.  
See Jones
, 833 S.W.2d at 124
; 
Gordon v. State
, 801 S.W.2d 899, 916 (Tex. Crim. App. 1990).  In both cases, the court held that without such underlying facts, there was nothing to support the magistrates’ findings of probable cause.  
See Jones
, 833 S.W.2d at 124 (concluding that “there were no facts that would lead a neutral and detached magistrate to conclude that appellant was the perpetrator of the crime”); 
Gordon
, 801 S.W.2d at 916 (concluding that the affidavit “lacks the necessary indicia of reliability demonstrated by facts showing probable cause for the magistrate to have made a proper evaluation of the allegations before issuing the warrant”).  We have not found that to be the case here, however, because the affidavit does detail the facts and reasons underlying Detective Ford’s conclusion that Appellant had committed this particular offense.  Additionally, in 
Visor v. State
, a case also relied upon by Appellant, the court of criminal appeals held invalid a combination search and arrest warrant that authorized the arrest of an “unknown black female.”  660 S.W.2d 816, 818-20 (Tex. Crim. App. 1983).  However, the affidavit and warrant in this instance did specifically name Appellant; therefore, we find 
Visor
 inapplicable to the present case.  Given these facts, we conclude that the affidavit did support a finding of probable cause by the magistrate.

CONCLUSION

Having concluded that the affidavit did contain sufficient facts to establish probable cause, we overrule Appellant’s sole point.  Accordingly, we affirm the trial court’s judgments.

ANNE GARDNER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 5, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The trial court certified Appellant’s right to appeal based upon written motions filed and ruled upon before trial.  
See
 
Tex. R. App. P.
 25.2(a)(2).